Good morning, Your Honor, Your Honors, and may it please the court. My name is Dan Berglund, and I am here today representing the Appellate State Farm Fire & Casualty Company. And if I may, I would like to reserve five minutes for rebuttal. Your Honors, I think the facts of this case are pretty self-explanatory, and they are not dissimilar to other cases where AMZN has been a named defendant. Like many of those other cases, AMZN is alone in being the only party that can be hailed into court after a defective product has caused damage or personal injury to a plaintiff. There are, however, a couple of factual and legal issues that distinguish this particular case from others. And that's what I'd like to focus on here today. Now, factually, this case is distinguishable from some of the other cases. And that includes the Steiner decision that Mr. Murphy just provided to you last week, because it involves the fulfillment by AMZN program. And through this program, AMZN intakes an inventory of a product before a sale even occurs, keeps possession of it until sale, processes the sale, and then packages and places the product back into the stream of commerce. So there's this additional layer of active participation in the sale and distribution of the product that doesn't exist in some transactions. On the legal side, of course, we're dealing with Arizona law, which is something no prior federal circuit court has addressed in these Amazon cases. Now with that said, I did receive the court's order last week requesting that we be prepared to talk about the issue of certification to the Arizona Supreme Court. And if I can jump right into the water on that issue now, your honors, I'd like to do so. Now given the introductory language of the TOR's decision from the Arizona Supreme Court, I understand that this is why the court would ask this question. Given that language, it seems like the court may grant certification if asked, but I personally believe that certification of the case isn't necessary. And under various cases in this required to certify questions unless an issue has not been resolved by state courts. And Amazon has this issue been resolved by Arizona state courts. I do believe it has, your honor, because we are talking about a retailer and I will get into that in a little bit more detail later on here. Because we aren't talking about the issue like a licensor such as in Torres, we're not dealing with the issue of an auctioneer. This is something involving a retailer. And I believe that Amazon is a retailer for the reasons that I will get in. And for that reason, I believe that we're not really treading into territory where Arizona precedent doesn't provide guidance. So can I ask you a question if this were a brick and mortar retailer, is your position that Arizona law is clear that if this if this had been purchased, if the hoverboard had been or a brick and mortar company, that there would be strict liability to that retailer? Absolutely, your honor. And I think the case law makes clear even when you look at the decisions that we will be discussing here today, be at grub, where you had the online or you had the the cooperative, the hardware store in that case, which was, I believe, called B and D hardware, that that, that defendant was named as a in strict liability. In Dillard department stores, of course, Dillard department store was named in strict liability. And it's all because they have this interface with the consumer. They are part of the stream of commerce. And similarly here, your honor, if you look, they're also sellers, aren't they? I mean, the traditional retail model, the retail store actually owns the product and sells it to the customer. So they fit exactly the language of seller. And Amazon says it doesn't. And it doesn't take title. There's at least a gap there, isn't there? There is a gap in the sense that they don't take title. And as we address in our brief, this, this process that they use to facilitate the sale, as they call it is really no different than what a retailer does. The only difference is they take a commission on the sale, rather than take possession and then mark the product up. So on an objective basis, if you were a it's really no different than if you're purchasing from a brick and mortar store. The only argument and functionally, they work in a very similar fashion. But as your colleague across the aisle has pointed out, there are lots of cases that have found that difference to be one that matters. Well, in this case, if you were looking at the Arizona precedent, there is a lot of factual distinction between those cases. And you don't have the direct interface with the consumer, such as the such as in the case of the cooperative or the broker. And in the case, you have to start talking about distinctions from the Arizona cases, and you want us to draw some, it makes me that much more skeptical that Arizona law gives a clear answer. So we should jump ahead and answer this question for ourselves. Well, Your Honor, I think that the guidance is there. If you look at it, and if you think the guidance is there, and your colleague thinks the guidance is there only think the guidance points in different directions. Now we're used to that. It happens all the time. But if there's an issue of state law, I come back to the original inquiry. We're not supposed to be making decisions of state law, that's for the state courts. And I'm still waiting to hear, other than the fact that you think maybe you can win without going to state court, and maybe you're not optimistic about what the Arizona Supreme Court will say. But I still haven't heard why we should jump forward with making a decision. Okay, well, if I may, if you take a look at the Diller decision, because that does a good job in articulating what that line is between a seller and something that should not be considered a seller under state law. And the Diller decision cites what it calls the dual concepts of profitable venture and preventive action in determining when the public policy considerations for Section 402a apply. So if a party is part of the enterprise, the court should determine whether the party is profiting, and whether it is in a position to take measures to increase safety with respect to the product going forward. And our brief list all of the ways that Amazon participates in the enterprise, and I've detailed them all, it creates the website, it selects what vendors are allowed to sell in the market marketplace. With the fulfillment by Amazon program, it takes possession of the product, and Amazon not super engine conducts the sales transaction. So it's got this participatory connection to the stream of commerce. But it's also in a position to take preventive measures. And as we note in the brief, Amazon monitors product quality, pulls dangerous products, it issues warnings, it handles returns. So it has this power to prevent dangerous products from reaching the consumers by its ability ability to shut off that valve for the stream of commerce. And that is why Your Honor, we believe that the precedent in Arizona does supply sufficient guidance here to make a determination that Amazon is a seller for the purposes of So this isn't a case where Amazon simply picking up a product and delivering it to an address like a UPS or a FedEx. And it's not a case where Amazon simply processing a transaction for the benefit of the seller, like Visa or MasterCard. It's it's not the role of an auctioneer, where there's no continuing contact with the manufacturer upstream vendor. And as Judge Nelson pointed out, it's really what it has done is it's created an online version of a department store. It's engaged in the business of selling products, which is the statutory definition of seller. And can I ask you about that, Mr. Berglund? Oh, sorry. Go ahead. Go ahead, Judge Smith. I was gonna say, Mr. Berglund, it seems to me that you pick a case. And you could try to suggest that that case is going to control what I do. I'm on de novo review here. And the district court said, well, what I want to do is I want to look at all the Arizona cases. I want to put them all out there. And I want to see what they said. And I want to look at what the factors are in determining if the entities participate significantly in the stream of commerce and therefore subject to strict liability, and then picks seven factors and found those seven factors in the different cases in Arizona, and then analyze those factors and came down with a decision. I'm trying to figure out why the district court's decision why that analysis was wrong. Arizona courts have repeatedly applied a contextual analysis. They balanced multiple factors to answer whether the company participated significantly in the stream of commerce. That's what the district court did. And I went through the district court's opinion. And frankly, I'm having a tough time understanding why I shouldn't do the same thing. Well, Your Honor, there are a couple of issues. And it's discussed in our brief. I know it's discussed in your brief, but frankly, pick one of those because I mean, I look at no warranty. Yeah, no refunds were provided. But the third party sellers gave them the funds to do the refunds. There was no warranty here. Did Amazon facilitate the shipping? Well, not all not at all. The control was exercised by sellers, not like the controller was exercised by sellers in Grubb and Dillard. And I'm trying to think what argument you would present that the district court was wrong in assessing the factor. I mean, I'm trying to go through each one of those seven factors. And I frankly think the district court came out pretty, pretty fair. If we don't send it over to the Arizona Supreme Court, find out what the answer is. Well, Your Honor, there are a couple of issues that I do raise in the brief. And one is that we did present evidence that contradicted some of the court's holdings. And so what the court did... What evidence? Give me one. Well, with respect to the guarantee, the warranty... With respect to the guarantee, you said there was refunds that were provided. But frankly, it is absolutely from the record that the third party sellers from whom give to Amazon any amounts they have to do in a refund. So I don't think the district court was wrong. Well, Your Honor, you have to look at it in light of the Amazon Prime program, and also in light of the Amazon A to Z guarantee. And the Amazon... I guess if that's your best, that's good. If that's the best you got, is there another? Well, Your Honor, certainly with respect to the Amazon Prime program, then they factor in again, the factors here are not factors that any court in... Yeah, they're not factors that any one court has said are the factors. But the district court, like I would need to do, would have to look at all of the Arizona cases that have been on this kind of an issue. And they would have to see what the in that. And then they would have to apply it in this particular measure, or they'd have to put one case above another. And so what the district court did was say, okay, Arizona's got all these cases, I'll put all these factors together. I'll go through and see which one makes and which one doesn't. And in effect, the one who wins a win. And that's what I'd have to do, given I'd have to look at the I don't send this to the Arizona Supreme Court to decide it. I don't know how other way to decide it than how the district court did. Well, Your Honor, I do respectfully submit that the court did weigh factors, but it forgot to do it in a way that applied the broad application. If I take your brief, is your brief point out all of the Is there anything you want to add to that? Because if so, I have seriously looked at what you have suggested in your brief to determine if that's something I ought to worry about. And I've made a decision. Is that all I need to do? Well, Your Honor, I guess I would respectfully request that you review the facts in the Bolger case, because the Bolger case is no different than the case that is before you today in terms of the transaction and the processes that were involved in the in Amazon's sale of that product as well. All right, if the court has no further questions, it looks like I am out of time. All right, well, you've reserved some for rubato. Mr. Murphy, go ahead. Good morning, and may it please the court Brendan Murphy for amazon.com. I'd like to start by directly addressing the court's question about why it should make a decision rather than certifying to the Arizona Supreme Court. The reason the court can make a decision here is that there is sufficient material in Arizona law to to analyze the issue and come up with and predict exactly what the Arizona Supreme Court and intermediate appellate courts would do. While there's no decision squarely on the issue of Amazon in Arizona, as there is in a number of other places, there is a Supreme Court case that sets forth the mode of analysis for determining who is a seller in circumstances like a trademark licensor, where somebody does not fit the traditional common sense notion of selling, taking title, setting a price and so forth. That mode of analysis requires the court to look at whether there was significant participation, not in just a process by which a product is manufactured and gets to market. That's the language on pages 946 and 947 of Torres, and it's restated on page 948. But there's also a second part to it. It's a two part inquiry. The second part is there has to be control over the incidence of manufacture and distribution. And the Ella Torres dealt with a trademark licensor, the intermediate courts of appeal in Arizona have addressed a very similar situation involving marketplaces or companies that provide services that bring together buyers and sellers or otherwise assist in the sale of products. The most on point is Antone, the car auction case. Antone involved a very large marketplace. The court at one point says it's one of the largest or accepts the representation that is one of the largest auctions in the Arizona area. As in this case, the had possession of the product and stored it. It took possession in the night before, and then actually an auction really does engage in the act of selling. It's just doesn't happen to set the price. What's more, and what sets Amazon even further apart, even from the example in Antone, is that Antone offered an inspection program or the auction in Antone offered an inspection program. Amazon does not inspect products in the FBA program. Sellers who use the FBA service, and it's an optional service, and it's a service available to sellers who sell entirely off amazon.com. So it's not necessarily tied in with selling using amazon.com. The sellers who send their products into Amazon send them in fully packaged and assembled, and they're put on a shelf. And then when a buyer orders the product from the seller, it's taken off the shelf and either shipped in its own container or put in a box and shipping label is So to return to the mode of analysis used in Taurus, Can I ask about that factor? Because there is this idea that I mean, Amazon, they may not have individually inspected each product, but they ultimately came to the conclusion that there was a problem with hoverboards generally, and they stepped in. Why can't we consider that as, you know, sort of the inspection aspect of, of, of that test that you're talking about? So in the cases, in Antone and Grubb, where they elucidate on this factor, they're really talking about relationship with the manufacturer. And that's something that Amazon does not have in the third party seller situation. But to really drill down on your point, it is Wait, go back. You said they Amazon does not have a relationship with the third party seller? No, no, with the manufacturer. I remember the manufacturer in a third party situation. Got it. Okay, correct. And to your point, I think you had a question earlier, though, on the difference between retail and third party situations, brick and mortar. I want to make crystal clear what that distinction is. Amazon is not suggesting that it would be it would not be liable in a situation where it is the retailer. Amazon does sell some products on amazon.com. And in that situation, it's very it's just like the brick and mortar situation. Amazon sources the product, owns the product, puts a price on the product and offers it for sale. And Amazon is identified as the seller on amazon.com and all associated paperwork. Third party is completely different. Third party sellers are responsible for sourcing their product, owning their products, putting a price on their product and offering the product for sale and describing their products. But to return to your question about Can I ask just the analogy, would the analogy be a consignment store in a brick and mortar context, where they just take anything that a third party seller comes in and they take a commission off of that? Would that be the appropriate comparison in a brick and mortar context here? No, it wouldn't, because a consignment seller actually does set the price they take, they take things in, they don't necessarily hold title, but the consignment seller is saying, hey, here, this couch is going to be $300 for, you know, whatever the price is. And there's actually a comment in the Arizona UCC, and it's entitled, it's 901, where they talk about what consignment sellers are, because people sometimes say, well, Amazon, because you have possession of this product, you must be a consignment seller. The comment in comment 14 of section 901, makes clear that just having possession and shipping on something that's not a consignment sale. So that so Arizona law does distinguish between those, those things. So title, and I know this came up in the, in the briefing, but title is not always the touchstone here. You can be a seller without taking title. And you agree with that position, correct? I agree with that, Your Honor, under Arizona law, because Torres states that fairly clearly. But they're really considering situations where a product got to a customer in a non sale situation. And it is true that a lot of states have extended strict liability to lessors and some to bailors. And in those cases, those are not title transactions, necessarily. But here, the product reached the consumer through a sale. So it is appropriate to place a greater weight on title ownership in this particular case, and really, in cases of all the third party sales on Amazon. The person who originally bought the hoverboard, when he's a friend, I've, I'm getting a hoverboard. It seems to me likely he'd say I got it from Amazon rather than the name of the actual entity. And so I get the distinctions that you've been trying to draw and that Arizona law has drawn in different contexts, but I don't see any case from Arizona that why shouldn't we treat that as placing the product in the stream of commerce since without Amazon, that transaction would never have taken place? Well, because placing within the stream of commerce is sort of an overall umbrella concept that the Arizona courts have cited Torres cited that from the concurrence and Judge Jacobson's Judge Jacobson's concurrence in Chiruga. But they've really drilled down on what it means to place something in the stream of commerce. And that's the Torres two part analysis, which gets repeated, or cited as the to me that Torres says that we're going to go beyond the title ownership, we're going to go beyond the strict definition of seller on these facts. And Torres does not to me clearly say, but anything beyond these facts that doesn't count. It seems to me we're more into a territory that at least the Arizona Supreme Court hasn't explored. So I think your response to the question that we posed about certification is similar to your colleagues. I think we can win on the cards we've got. So we want to play those. But if we're not going to win, we're probably going to want you to certify and give me confidence that it's really our question to answer. Well, under Erie precedent in the Ninth Circuit, the court can look to the intermediate courts of appeals in Arizona and the courts have applied the Torres analysis outside the trademark license or context. So the courts have said, in Antone and Grubb, in particular, have said that in these non traditional sales situations where we're trying to figure out what is a seller under his own law, the question comes down to what Torres said, is there significant participation in the overall process by which it gets manufactured and distributed? And is there a control by the purported seller over the incidence of manufacturer and distribution and Antone says that in a couple, Antone says that at page 1080, and Grubb says that at pages 627 to 628. So that is the intermediate courts of appeals have adopted that mode of analysis for dealing with these other situations, specifically, an auction, which is a marketplace very similar to Amazon, except for the way prices are set, and for the buying cooperative in Grubb. And let me let me let me ask you a question, counselor. I read Torres, supposing based on my reading of Torres, I don't think that controls. And in fact, it says right in Torres, court must acknowledge the realities of the marketplace when it decides cases. And I look at what it says in there. Look at what it does. And I try to read the other cases in Arizona. And it are causally linked to the defective product by having placed it into the stream of commerce. And then what it means to having been placed in the stream of commerce is is a tough thing. And that's where the district court came. Now, I don't know why the district court or I, I'm in a better position to make this decision than the Arizona Supreme Court. Based on what I pointed out to you, tell me why I am. Well, I I mean, the district court tried its best to put the precedent of Arizona in perspective and consider every one of the factors that each one of those cases put together. And it came down in your favor. But I said to myself, why is it that this spot to make this decision than the Arizona Supreme Court? Well, I don't I mean, I don't know that a federal circuit or whatever be in a better position than a state court to say what state law is. I can't then why don't we see that over there? Well, because there's sufficient material in state law. There's a state Supreme Court decision that says this is what the analysis is. There are two. Well, Torres is your decision? Torres? Yes, Your Honor. And the position you stated? Well, no, because the it's not just Torres, but the intermediate courts of appeals after Torres and Antone and Grubb have gone on to apply the analysis stated in Torres to analyze whether entities who provide services, including Antone, a marketplace are actually sellers. And just to go to the realities of the marketplace language that you're citing on page 944 of Torres, that comes immediately before the paragraph where the court is basically examining the overall apparatus in which this product is manufactured, licensed and sold. So what the court is talking about in the realities of the marketplace is that goes to the overall process. And what plaintiffs are trying to do is shrink the frame of reference in judging what is significant participation. So if you were saying, what is significant participation in the context of a single transaction on Amazon dot com or a single transaction with GAA and Antone, if your frame of reference is just the transaction level, of course, everything looks significant in that light. But what Torres makes clear with that reality is the marketplace is that the frame of reference needs to be broad. You need to look and see how is this product made? How is it distributed? And that's where plaintiff has no evidence whatsoever. There is no evidence that Amazon had anything to do with how this product is manufactured. There's no evidence Amazon had anything to do with how it's distributed other than providing one of many possible ways a seller may on its own volition choose to sell its own products. Do they have exclusivity agreements? Meaning Amazon says to this third party seller, you can sell through us, but you can't sell it anywhere else? No. In fact, the there is a provision in the VSA. It's not in there anymore. It's the parity provision. I think it's four or somewhere around there, where it acknowledges that you can basically sell anywhere else. There's that, but you can't sell it for lower, right? That that was before 2019. That is correct, Your Honor. In this case, that existed, the parity provision existed. So they allowed him to sell it, but they set a floor. They set a floor plot price. But that does not exist. So today, if you were to come to Amazon, you can sell it at various prices, regardless. That's correct, Your Honor. But I just want to make clear that just because that provision is gone doesn't mean there's exclusivity. Third party sellers are free to sell wherever they want. No, I understand. But it does it does exert a little bit more control of setting the price. I mean, it brings you a little bit closer, I think, to the consignment example, because you're actually not setting the price, but you're at least setting the floor price. Well, I mean, you're basically when that provision existed, you're saying that it has to be equal to or lower than your other channels. But the seller remains free to set it wherever it wants, provided it complies with that. But that is gone. I see that I'm out of time. Unless the court has further questions, I'll just wrap up by saying that the district court applied well-established precedents in Torres, Antone, Grubb, correctly applied the factors and should be affirmed. Thank you, Your Honor. I guess we did only have seven seconds. We'll give you two minutes for rebuttal. I appreciate it, Your Honor. I do just want to briefly address the Torres decision. Because Mr. Murphy indicates that the Torres decision creates some sort of obligation on the part of the seller or however it's defined to have some sort of control over the manufacturing of the product. And I think that that is a bit of an overreach. I think in the specific instance of Torres, you were talking about a licensor. And that was the specific question that the state Supreme Court was addressing there. And the fact that that licensor needed to have some control over the manufacturing. There is no precedent in Arizona whatsoever that says a retailer, someone who sells the product has some sort of obligation to control the manufacturing in order to be held strictly liable. Even in Grubb, the case that Mr. Murphy cites, that hardware store, that B&D hardware was still subject to strict liability, even though the cooperative was not. So it is, as Judge Smith indicated, it's this realities of the individual. So if you look at what Amazon does here in an objective sense, whether you consider it an intermediary or a retailer, it's engaged in the business of selling a product. And that's that statutory definition. It's an active and it's a significant participant in how that product reached the consumer. And for that reason, Your Honor, we believe that the district court erred in determining that Amazon can't be a retailer. So with that, I think the court has any further questions. I'll see the rest of my time. It sounds like we're good. So thank you, both counsel for excellent arguments and the case is now submitted. Thank you, Your Honor.
judges: Clifton, N.R. Smith, Nelson